UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARLOS RAFAEL MEJIA GUARDIAN, | § § § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION NO. 3:23-CV-2340-B |
| ELIZABETH MONROY BAÑUELOS, | § § § | |
| Respondent. | § | |

### MEMORANDUM OPINION AND ORDER

On October 23, 2023, Petitioner Carlos Guardian ("Petitioner") filed the present *Ex Parte* Application for Temporary Restraining Order (Doc. 4). Petitioner asks this Court to enter a temporary restraining order to prohibit Respondent Elizabeth Bañuelos ("Respondent")[1] from removing their child, C.M., from the jurisdiction of this Court. For the following reasons, the Court **GRANTS** Petitioner's Application.

### I.

### BACKGROUND

Petitioner's Verified Complaint sets forth the relevant facts. C.M. is the five-year old son of Petitioner and Respondent. Doc. 1, Verified Compl., ¶¶ 17–18. C.M. was born in 2018 in Michoacán, Mexico. *Id.* ¶ 17; Doc. 1-4, Birth Certificate. Petitioner, Respondent, and C.M. lived together in Mexico until Petitioner and Respondent ended their romantic relationship when C.M. was 13-months old. Doc. 1, Verified Compl., ¶¶ 20, 22.

---

[1] According to the Verified Complaint, Respondent currently resides in Dallas County under the alias "Norma Hernadez." Doc. 1, Verified Compl., ¶¶ 9–10.

After Petitioner and Respondent broke up, they agreed to "an informal co-parenting relationship" wherein each parent would care for the child for one half of each week. *Id.* ¶ 23. This co-parenting relationship lasted about one year, at which time Respondent decided to move temporarily to the United States. *Id.* ¶ 24. Petitioner took full responsibility for C.M.'s care in Mexico while Respondent was abroad. *Id.* ¶ 26.

Not long after she relocated, Respondent urged Petitioner to allow C.M. to move to the United States to live with Respondent. *See id.* ¶ 35. Apparently suspect of Respondent's intentions, in 2020, Petitioner initiated judicial proceedings in Mexico to establish formal custody of C.M. *Id.* ¶ 36. In July 2020, a Mexican Court granted Petitioner provisional custody of C.M. while his complaint remained pending. *Id.* ¶ 37.

Once the Court granted provisional custody to Petitioner, Respondent returned to Mexico and asked to resume the co-parenting arrangement the parties previously established. *Id.* ¶¶ 37–38. Petitioner agreed to this proposal. *Id.* ¶ 38. Two weeks after the parties resumed their joint parenting responsibilities, however, Respondent failed to return C.M. to Petitioner pursuant to their informal agreement. *Id.* ¶ 39. When Petitioner reached out to Respondent for an explanation, Respondent made a number of allegedly disingenuous excuses. *Id.* ¶¶ 39–41. Respondent never returned C.M. to Petitioner. *Id.* ¶ 42.

In August 2020, Respondent filed her own complaint in Mexico to establish formal custody over C.M. *Id.* ¶ 43. In light of the Petitioner and Respondent's cross custody complaints, the Mexican judiciary "notified the National Institute of Migration in Michoacán that [C.M.] could not leave Mexico without notifying the court and without permission of both parents." *Id.* ¶ 44; *see also* Doc 1-9, Migratory Alert. Respondent's complaint was eventually joined with Petitioner's in October 2020. Doc. 1, Verified Compl., ¶ 46.

In June 2021, a Mexican Court conducted a hearing on the parties' complaints and, subsequently, entered an order granting Respondent provisional custody until a final custody determination could be made. *Id.* ¶ 48. The Court's order also provided Petitioner visitation rights; Respondent, however, violated this aspect of the order by failing to permit Petitioner to see his child—pursuant to the order, Petitioner went to a visitation center twice a week for eight months to visit with C.M., but Respondent never brought C.M. to the visitation center to see Petitioner. *Id.* ¶¶ 50–51. As a result, in April 2022, a Mexican Court "issued a warrant for Respondent's arrest, fined her, and re-granted provisional custody of C.M. to [Petitioner]." *Id.* ¶ 58; Doc 1-12, Order. Mexican authorities were unable to enforce this latest order, however, because it appears that Respondent fled to the United States with C.M. *See* Doc. 1, Verified Compl., ¶¶ 9–10.

It is unclear when exactly Respondent left Mexico because the Mexican National Institute of Immigration has no record of her exiting the country. *See id.* ¶ 66; Doc. 1-13, Letter. Petitioner only learned that Respondent moved back to the United States when Respondent's "former friend" informed Petitioner that Respondent was living in Dallas County with C.M. under the alias "Norma Hernandez." Doc. 1, Verified Compl., ¶¶ 9–10. After learning that Respondent and C.M. were living in Dallas, Petitioner filed an application under the Hague Convention with the United States Department of State to return C.M. to Mexico. *Id.* ¶ 67. The State Department referred the matter to Petitioner's counsel, who subsequently filed the present *Ex Parte* Application for Temporary Restraining Order. The Court considers it below.

## II.

## LEGAL STANDARD

To be entitled to a temporary restraining order, Petitioner must establish: (1) a substantial likelihood of success on the merits of his claim; (2) a substantial threat Petitioner will suffer

irreparable harm if the temporary restraining order is not granted; (3) the threatened injury outweighs any damage the temporary restraining order might cause the Respondent; and (4) the temporary restraining order will not disserve the public interest. *Valles v. ACT, Inc.*, No. 4:22-CV-00568, 2022 WL 2789900, at *1 (E.D. Tex. July 15, 2022). "The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order . . . can be granted." *Texas v. United States*, 524 F. Supp. 3d 598, 651 (S.D. Tex. 2021) (quotations omitted). Because a temporary restraining order is an "extraordinary remedy that requires the applicant to unequivocally show the need for its issuance. . . . [a] denial of a temporary restraining order will be upheld where the movant fails to sufficiently establish any one of the four criteria." *Collins v. Nat'l Football League,* 566 F. Supp. 3d 586, 594 (E.D. Tex. 2021) (citations omitted).

If a petitioner requests the court to issue a temporary restraining order *ex parte*—that is, without prior notice to the respondent—the petitioner must satisfy two further requirements. First, the petitioner must set forth "specific facts in . . . a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Second, "the movant's attorney [must] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(b)(1)(B).

## III.

## ANALYSIS

The Court concludes that a temporary restraining order is warranted in this case. As discussed more fully below, Petitioner's Verified Complaint demonstrates (a) that he has a substantial likelihood of success on the merits of his claim under the Hague Convention; (b) that

he will suffer irreparable harm in the absence of a temporary restraining order; (c) that the balance of the harms weighs in his favor; and (d) that the issuance of a temporary restraining order is not against the public interest. Accordingly, Petitioner's Application will be **GRANTED**.

A.   *Likelihood of Success on the Merits*

In his Application, Petitioner argues that he is likely to succeed on the merits of his claims under the Hague Convention and the International Child Abduction Remedies Act. The Hague Convention was adopted "in response to the problem of international child abductions during domestic disputes." *Abbott v. Abbott*, 560 U.S. 1, 8 (2010). It is designed "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Id.* (quoting Hague Convention, art. 1).

The Hague Convention provides that when "a child has been wrongfully removed or retained . . . the authority concerned shall order the return of the child forthwith." *Id.* (quoting Hague Convention, art. 12). A child is wrongfully removed or retained under the Hague Convention if the removal or retention "is in breach of rights of custody attributed to a person, . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention" and if "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." *Id.* (quoting Hague Convention art. 3).

To establish a prima facie case for wrongful removal or retention under the Hague Convention, Petitioner must prove three elements by a preponderance of the evidence: (1) "the respondent removed or retained the child somewhere other than the child's habitual residence"; (2) "the removal or retention violated the petitioner's rights of custody under the habitual-

residence nation's laws"; and (3) "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." *Vazquez v. Vasquez*, No. 3:13-CV-1445-B, 2013 WL 7045041, at *16 (N.D. Tex. Aug. 27, 2013) (Boyle, J.) (quotations and citation omitted), *aff'd sub nom. Sealed Appellee v. Sealed Appellant*, 575 F. App'x 507 (5th Cir. 2014). Here, Petitioner has introduced enough evidence on each element for the Court to conclude that he is likely to succeed on the merits of his claim.

1. <u>Habitual Residence</u>

Petitioner argues that C.M.'s habitual residence is Mexico. The Court agrees. A child's habitual residence is "[t]he place where a child is at home, at the time of removal or retention." *Monasky v. Taglieri*, 140 S. Ct. 719, 727 (2020). However, "[b]ecause locating a child's home is a fact-driven inquiry, courts must be sensitive to the unique circumstances of the case and informed by common sense." *Id.* (quotations omitted). Here, C.M. was born in Mexico, and prior to C.M's removal, C.M. had only ever lived in Mexico. Doc. 1, Verified Compl., ¶¶ 17–19; Doc. 1-4, Birth Certificate. Petitioner and Respondent cared for C.M. in Mexico, "by providing him with food, medical care, clothing, toys, and everything else he needed." Doc. 1, Verified Compl., ¶ 21. Solely for purposes of the present Order, the Court concludes that Petitioner has presented evidence sufficient to establish Mexico as C.M.'s habitual residence.

2. <u>Violation of Petitioner's Right of Custody</u>

Since Petitioner has demonstrated that Mexico is C.M.'s country of habitual residence, the "question becomes whether the removal or retention violated the petitioner's 'rights of custody' under the habitual-residence nation's laws." *Vazquez*, 2013 WL 7045041, at *20. Thus, Mexican law governs whether Petitioner's rights of custody were violated.

"While parental authority and custody are . . . distinct concepts in Mexican law, people who possess parental authority over a child generally have custody rights as well unless altered by judicial decision." *Gallegos v. Garcia Soto*, No. 1:20-CV-92-RP, 2020 WL 2086554, at *5 (W.D. Tex. Apr. 30, 2020). Here, the Verified Complaint demonstrates that, under relevant law, Petitioner had parental authority over C.M. *See* Doc. 1-5, Translated Michoacán Family Code, art. 398(I). Therefore, Petitioner had custody of C.M. absent a court order to the contrary. *Gallegos*, 2020 WL 2086554, at *5. Attached to Petitioner's Verified Complaint is a 2022 order from a Mexican Court granting Petitioner provisional custody of C.M. *See* Doc 1-12, Order. Petitioner avers that Respondent has retained C.M. in the United States in defiance of this order. Doc. 1, Verified Compl., ¶¶ 6, 58–59. As such, the Court concludes that—for the limited purposes of resolving Petitioner's Application—Respondent's retention of C.M. in the United States breached Petitioner's rights of parental custody.

### 3.     Exercise of Rights at Time of Removal or Retention

Finally, Petitioner has established that he exercised his rights of custody prior to C.M.'s removal or retention. Before Respondent's first stint in the United States, Petitioner cohabitated with and cared for C.M. every week. *Id.* ¶¶ 21–23. And when Respondent was unable to provide care for C.M. while she was abroad, Petitioner took full responsibility for C.M.'s wellbeing. *Id.* ¶ 26. Petitioner also attempted to visit his son twice a week for eight months when Respondent had provisional custody of C.M. *Id.* ¶ 51. Finally, ever since Petitioner regained provisional custody of C.M., Petitioner has attempted to enforce his parental rights. Therefore, for purposes of the present Order, the Court concludes that Petitioner exercised his parental rights over C.M. at the time of retention or removal. *Cf. Soto v. Garcia*, No. 3:22-CV-0118-B, 2022 WL 780701, at *8 (N.D. Tex.

Mar. 15, 2022) (Boyle, J.) ("[T]o show failure to exercise custody rights, the removing parent must show the other parent has abandoned the child." (alteration and quotations omitted)).

Accordingly, Petitioner has demonstrated that he is likely to succeed on the merits of his claim under the Hague Convention.

B.   *Irreparable Harm*

Petitioner must next show he will suffer irreparable harm in the absence of a temporary restraining order. The Court concludes that Petitioner has satisfied this burden.

Having already removed C.M. from Mexico to the United States in an apparent attempt to prevent Petitioner from maintaining a relationship with C.M., it is likely that Respondent would relocate with C.M. a second time if she was aware of Petitioner's attempts to enforce his custodial rights. *See Esparza v. Nares*, No. 4:22-CV-03889, 2022 WL 16963998, at *3 (S.D. Tex. Nov. 16, 2022) ("Based on Respondent's actions in removing the Children from Mexico, there is strong likelihood of further movement of the Children absent Court interference."); *Garza Rodriguez v. Escamilla Lara*, No. DR-13-CV-077-AM, 2013 WL 12109029, at *2 (W.D. Tex. Oct. 25, 2013). And if Respondent were to relocate with C.M. to a different part of the United States (or abroad), Petitioner may face further delay in locating him. In addition, the risk of Respondent relocating with C.M. is not merely speculative—Respondent has already taken great measures to prevent Petitioner from accessing C.M., including changing her name, disregarding court orders, and evading Mexican immigration authorities. *See* Doc. 1, Verified Compl., ¶¶ 9–10, 56–58, 66; Doc. 1-2, Exhibit; Doc. 1-9, Letter; Doc. 1-12, Order; *see also Lopez v. Ash*, No. CV 22-1053, 2022 WL 1207146, at *3 (W.D. La. Apr. 22, 2022). Under these circumstances, there is a substantial risk that Respondent will relocate with C.M., which in turn could jeopardize Petitioner's parental rights. Therefore, the Court concludes there is a substantial threat of irreparable harm.

C.   *Balance of the Harms & Public Interest*

Petitioner has also established that the balance of the harms weighs in favor of issuing a temporary restraining order. Granting a temporary restraining order that restricts Respondent from traveling with C.M. outside this Court's jurisdiction, where they purportedly reside, will be a minimal burden. *Garza Rodriguez*, 2013 WL 12109029, at *2. And, as discussed, the potential harm to Petitioner in the absence of a temporary restraining order is substantial. Thus, the burden of restricted travel is outweighed by the substantial threat of harm to Petitioner.

Finally, the public interest is not disserved by enforcing the laws and treaties of the United States, which includes the Hague Convention. *See Esparza*, 2022 WL 16963998, at *3. Because enforcement of the Hague Convention is required under United States law, 22 U.S.C. § 9003, the Court concludes that the issuance of a temporary restraining order aligns with the public interest in this case.

D.   *Notice to Respondent is Not Required*

Because Petitioner asks the Court to issue a temporary restraining order without giving prior notice to Respondent, he must further explain to the Court's satisfaction why notice should not be issued. Petitioner contends that notice should not be required in this case because there is a substantial risk that Respondent would relocate with C.M. if she had knowledge of the present proceeding—and this is the precise harm that Petitioner seeks to avoid by filing his Application. *See* Doc. 5, Certification. The Court concludes that this is a sufficient reason for issuing a temporary restraining order *ex parte*.

## IV.

## CONCLUSION

The Court concludes that Petitioner is entitled to the relief he requests. Accordingly, Petitioner's *Ex Parte* Application for Temporary Restraining Order is **GRANTED.** The Court **ORDERS** that:

1. Respondent Bañuelos must:

    a. Refrain from removing C.M. (the "Child") from the jurisdiction of this Court until the Court conducts a hearing on the merits of the Verified Complaint;

    b. Within twenty-four hours of service of this Order, submit passports for herself and the Child to the custody of the Court until this case is resolved;

    c. Provide the Court and Petitioner with current contact information for herself and the Child;

    d. Ensure that the Child check in with Petitioner via telephone and disclose the Child's current location at least once every twenty-four hours until the Court rules on the merits of the Verified Complaint;

    e. Allow Petitioner in-person visitation with the Child if he travels to the United States from the time that this Order is entered until the Court rules on the merits of the Verified Complaint; and

    f. Advise the Court and Petitioner, through his counsel, in writing any time she or the Child will be gone from that address for more than twenty-four hours.

2. The bond contemplated in Rule 65 of the Federal Rules of Civil Procedure is waived.

3. An expedited preliminary injunction hearing on the merits of the Verified Complaint will take place **on November 3, 2023 at 2:00 o'clock p.m**. in **Courtroom 1516** of the **United States District Court for the Northern District of Texas (Dallas Division), located at 1100 Commerce Street, Dallas, Texas 75242**. At the expedited hearing, Respondent must show cause why the Child should not be returned to Mexico and why such other relief requested in the Verified Complaint should not be granted.

4. Pursuant to Federal Rule of Civil Procedure 4(c)(3), the Court directs the United States Marshals Services to serve Respondent with the Verified Complaint, the Application for Temporary Restraining Order, the Rule 65 Certification, and a copy of this Order. At the time of service, the Marshals are to take possession of Respondent and the Child's passports and travel documents, if such documents are available at that time.

This Order is issued on the Court's preliminary findings that Respondent will continue to wrongfully retain C.M. from his habitual residence in Mexico and prevent Petitioner from exercising his parental rights. If, as alleged, Respondent flees in an attempt to avoid unfavorable resolution of this action, Petitioner will continue to suffer the inability to enforce his custodial rights.

This temporary restraining order shall be in effect until November 3, 2023, unless for good cause the court extends it or the adverse party consents to an extension not to exceed 14 days.

SO ORDERED.

SIGNED: October 25, 2023, at 11:45 a.m.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE